UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA ex rel.** | ) | |
| **TOBIAS G. PAYTON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 11 C 6610** |
| **v.** | ) | |
| | ) | **Chief Judge Rubén Castillo** |
| **RANDY PFISTER, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION AND ORDER

Illinois prisoner Tobias Payton ("Petitioner") is serving concurrent prison terms of seven years and thirty-one years for unlawful possession of a weapon by a felon and home invasion, respectively. Petitioner is currently in the custody of Randy Pfister ("Respondent"), the warden of Pontiac Correctional Center.[1] Presently before the Court is Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"). For the reasons stated below, the Court denies the Petition and declines to issue a certificate of appealability.

---

[1] When Petitioner first filed his federal habeas petition, he was incarcerated at Stateville Correctional Center, where Marcus Hardy was the warden. Petitioner is currently incarcerated at Pontiac Correctional Center, where Randy Pfister is the warden, so Pfister is automatically substituted as the named respondent in this case pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND[2]

On April 18, 2007, Petitioner was charged with aggravated battery with a firearm (Count I), two counts of home invasion (Counts II and III), unlawful possession of a weapon by a felon (Count IV), and intimidation (Count V). (R. 30-1, Ex. A, *Payton I* at 1; R. 30-1, Ex. B, Def.'s Br. at 14.) All the charges arose from an incident at the home of Shawn Mobley's mother on March 17, 2007. (R. 30-1, Ex. A, *Payton I* at 2.) According to the bill of indictment, Petitioner possessed a firearm after having been previously convicted of a felony, entered the house without authority, shot Mobley multiple times, and threatened a witness, Eva Morris, with physical harm if she told the police about the shooting. (*Id.*)

During pretrial proceedings, Petitioner informed the trial court that on the night of the incident he was at a gas station, and that he wished to subpoena the hard drive from the gas station's computer surveillance system. (*Id.*) Petitioner's attorney had already informed Petitioner that he had learned that the surveillance video recording had been erased, but counsel agreed in open court to discuss the hard drive issue with his investigator. (*Id.*)

## I.    Trial

Upon Petitioner's motion, the trial court severed the charge of unlawful possession of a weapon by a felon. (*Id.* at 1.) On September 5, 2007, a jury trial began on that charge in the Circuit Court of Will County, Illinois. (*Id.* at 2.) The State's witnesses testified that on the day

---

[2] In reviewing a petition for federal habeas corpus relief, the Court must presume that the state court's factual determinations are correct unless Petitioner rebuts those facts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The Court therefore adopts the recitation of the facts set forth in the Illinois Appellate Court's order denying Petitioner's direct appeal of his conviction, *People v. Payton*, Nos. 3-080281 & 3-09-0235 (cons.) (Ill. App. Ct. Sept. 23, 2010) ("*Payton I*"). The facts regarding the procedural history of this case come from the Petition and the state court record that Respondent provided pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

of the shooting, Petitioner was at the house three separate times, each time arriving in a red Ford Taurus. (*Id.*) On the first occasion, early in the day, Petitioner and his brother, Xavier Payton, arrived at the house accompanied by two females. (*Id.* at 2-3.) After socializing with alcohol, Petitioner and his companions left the house. (*Id.* at 3.) Later that evening, Petitioner returned to the house, accompanied by a different female. (*Id.*) In the presence of Morris, Petitioner asked Mobley if he could use Mobley's mother's bedroom to spend time with the female. (*Id.*) Mobley refused, and Petitioner became upset. (*Id.*) Mobley and Petitioner then attempted to contact Mobley's mother by telephoning a neighbor, LaDena Hite. (*Id.*) The men could not successfully locate Mobley's mother, however, and Mobley continued to refuse to allow Petitioner access to his mother's bedroom. (*Id.*) Mobley and Petitioner proceeded to engage in a physical altercation. (*Id.*) Petitioner then left but said that he would return. (*Id.*)

Shortly thereafter, Petitioner returned to the house for the third time. (*Id.*) This time Petitioner was accompanied by Xavier and kicked in the front door to the house. (*Id.*) Petitioner, Xavier, and Mobley entered the den, where Morris was located. (*Id.*) Mobley tried to reason with Petitioner, but Petitioner began shooting at him, striking him in the hand, leg, and knee and grazing his side. (*Id.*) Petitioner and Xavier left the house, but then returned to retrieve some of the shell casings. (*Id.*) Xavier told Morris that he would kill her if she told anyone about the shooting. (*Id.*) Petitioner and Xavier then left again. (*Id.*)

After the State's witnesses testified, the State introduced Petitioner's prior felony conviction of February 5, 2002, into evidence. (*Id.*) Petitioner presented no evidence. (*Id.*) On September 7, 2007, the jury found Petitioner guilty of unlawful possession of a weapon by a felon. (*Id.*)

Petitioner filed a post-trial motion alleging ineffective assistance of trial counsel. (*Id.*) In the motion, Petitioner argued that counsel was ineffective because he: (1) failed to impeach the State's witnesses with their statements to the police; (2) failed to call Petitioner's girlfriend, Tatiana Jackson, as an alibi witness; (3) failed to call public defender investigator Owen Beasley to testify that Hite told him that she thought the car belonged to Petitioner only because it was a maroon four-door car; (4) failed to obtain computer surveillance footage; (5) advised Petitioner to falsely testify that Xavier committed the crime; (6) advised Petitioner that he would lose and that the State's Attorney would make him look foolish if he testified that he was not at the scene of the crime or that he had nothing to do with the crime; (7) failed to object to hearsay testimony during Detective Joseph Fazio's testimony; and (8) failed to object to hearsay during the State's closing argument. (*Id.* at 3-4.)

On December 14, 2007, the trial judge conducted an inquiry into some of Petitioner's ineffective assistance claims. (*Id.* at 4.) First, the judge asked Petitioner about counsel advising him to testify. (*Id.*) Petitioner explained, "He actually advised me not to testify and that if I did, he would advise me to testify that the co-defendant had actually committed the crime." (*Id.*) Next, the judge questioned counsel about his reason for not calling Jackson to testify. (*Id.*) Counsel explained that Jackson had been interviewed and that her testimony would not have helped Petitioner's case. (*Id.*) Finally, the judge inquired as to the significance of Beasley's potential testimony. (*Id.*) Petitioner explained that Beasley would testify that Hite told Beasley different information than to what she had testified. (*Id.*) The trial judge stated that she remembered the facts of the case and that several witnesses had testified, and then she denied the motion on its face. (*Id.*) Petitioner responded that the State's witnesses had all testified differently from their statements to police in that "[t]he only thing that was the same was the fact

4

that [he] allegedly shot [Mobley]." (*Id.*) Petitioner argued that the other facts, such as who was present and where things happened, changed from the statements given to the police. (*Id.*) The judge reiterated that she was denying the motion. (*Id.*)

Before Petitioner's second jury trial on the remaining counts, Petitioner filed a *pro se* motion to dismiss the charges, alleging a violation of his right to a speedy trial under Illinois law. (R. 30-3, Ex. E, 01/15/08 Hr'g Tr. at 17.) On January 15, 2008, the trial court conducted a hearing on the motion and denied the motion, finding that Petitioner's speedy trial rights had not been violated. (*Id.* at 20.)

On February 20, 2008, Petitioner's jury trial on Counts I, II, and III began. (R. 30-1, Ex. A, *Payton I* at 4.) The State dismissed Count V before the beginning of the trial. (R. 30-1, Ex. B, Def.'s Br. at 20.) Most of the State's witnesses testified to the same facts to which they testified during the first trial, with some differences. (*Id.*) On February 25, 2008, the jury found Petitioner guilty of aggravated battery with a firearm and two counts of home invasion. (R. 30-1, Ex. A, *Payton I* at 4-5.) The convictions merged into a single conviction for home invasion pursuant to the one-act, one-crime rule. (*Id.* at 5.) On April 7, 2008, the trial court sentenced Petitioner concurrently to thirty-one years of imprisonment on the home invasion conviction and seven years of imprisonment on the unlawful possession of a weapon by a felon conviction. (*Id.*) Petitioner appealed his convictions. (*Id.*)

On November 26, 2008, while his direct appeal was still pending, Petitioner filed a *pro se* post-conviction petition, alleging that his trial counsel was ineffective. (*Id.*) On February 5, 2009, the trial court summarily dismissed his post-conviction petition as frivolous and patently without merit. (*Id.*) Petitioner appealed the summary dismissal of his post-conviction petition.

(*Id.*) The Illinois Appellate Court consolidated Petitioner's direct and post-conviction appeals.
(*Id.*)

## II.     Direct appeal

On appeal, with the assistance of counsel, Petitioner argued that the trial court abused its
discretion by only inquiring into some of his ineffective assistance of counsel claims. (*Id.*)
Specifically, Petitioner asserted that the trial court did not conduct an adequate inquiry into
Petitioner's claims as required by *People v. Moore*, 797 N.E.2d 631, 637-38 (Ill. 2003) (citing
*People v. Krankel*, 464 N.E.2d 1045 (Ill. 1984)), and thus his case should be remanded for a new
inquiry. (R. 30-1, Ex. B, Def.'s Br. at 22-26.) Petitioner did not present any argument regarding
the trial court's dismissal of his post-conviction petition. On September 22, 2010, the Illinois
Appellate Court affirmed the trial court's judgment, holding that the trial judge properly
considered and ruled on Petitioner's ineffective assistance of counsel claims based on her
discussions with both Petitioner and his attorney and her independent recollection of the jury
trials. (R. 30-1, Ex. A, *Payton I* at 8.)

While his direct appeal was pending, on September 24, 2009, Petitioner requested leave
to file a *pro se* supplemental brief in the Illinois Appellate Court. (R. 28, Resp't's Answer at 2
n.1.) In his *pro se* supplemental brief, Petitioner raised the following issues: (1) whether he was
found guilty beyond a reasonable doubt on all counts; (2) whether his statutory speedy trial rights
were violated; (3) whether the trial court abused its discretion in allowing "other crimes"
evidence in his first jury trial; (4) whether the trial court abused its discretion in dismissing his
post-conviction petition; and (5) whether trial counsel provided ineffective assistance by: (a)
failing to call Beasley and Jackson as witnesses; (b) failing to investigate and get video
surveillance footage that could have supported his alibi defense; (c) advising him to testify that

his co-defendant committed the crime; (d) failing to cross examine the CSI expert "on the trajectory of projectile and his trajectory rod findings"; (e) failing to argue caselaw to support his motion to dismiss based on the speedy trial statute; (f) failing to obtain the items from which fingerprints were lifted and compare them to Petitioner's fingerprints; (g) allowing the State to impeach Hite's testimony; (h) failing to object to the portion of his alibi statement that was hearsay and failing to get remainder of statement introduced into evidence; (i) arguing in closing that the State did not have evidence that Petitioner was present at the house; and (j) failing to admit the police reports into evidence. (R. 30-4, Ex. F, Pet'r's Supplemental Br. at 2-26.) On October 23, 2009, Petitioner's motion for leave to file this supplemental brief was denied. (R. 28, Resp't's Answer at 2 n.1.)

On December 15, 2010, Petitioner filed a *pro se* petition for leave to appeal ("PLA") in the Illinois Supreme Court, claiming that: (1) appellate counsel was ineffective for failing to raise a statutory speedy trial claim on direct appeal; (2) the trial court erred in denying Petitioner's motion to dismiss on statutory speedy trial grounds; (3) appellate counsel was ineffective for failing to argue a sufficiency of the evidence claim; (4) appellate counsel was ineffective for failing to challenge the dismissal of his post-conviction petition; (5) appellate counsel was ineffective for failing to raise a conflict of interest claim; (6) the trial court erred in declining to appoint new trial counsel when a conflict of interest existed; (7) the trial court abused its discretion in rejecting Petitioner's offer to stipulate to his prior felony conviction; (8) the trial court erred in instructing the jury on accountability; (9) "the state committed reversible error when they told the jury 'If that somehow thought Xaiver Payton really shot the gun at the behest of Tobias, you can find this person guilty of accountability'"; (10) the appellate court erred in denying Petitioner leave to file his *pro se* supplemental brief; and (11) trial counsel was

7

ineffective for failing to obtain video surveillance footage. (R. 30-3, Ex. E, PLA at 3-4.) On March 30, 2011, the Illinois Supreme Court denied Petitioner's PLA. (R. 22, Am. Pet. Writ Habeas at 2; R. 28, Resp't's Answer at 3.) Petitioner did not file a petition for a writ of certiorari to the United States Supreme Court. (R. 28, Resp't's Answer at 3.)

### III.    Post-conviction proceedings

On April 7 and 12, 2010, Petitioner filed with the trial court two *pro se* petitions for post-judgment relief under 735 Ill. Comp. Stat. 5/2-1401 ("the 2-1401 petitions"). (R. 30-14, Ex. P, April 7, 2010 § 2-1401 Petition at 217-20; R. 30-14, Ex. P, April 12, 2010 § 2-1401 Petition at 223-26.) In the first petition, he argued that the State committed "judicial misconduct" and "perjury" through the improper impeachment of Hite at Petitioner's second trial. (R. 30-14, Ex. P, April 7, 2010 § 2-1401 Petition at 217-20.) In the second petition, he argued that he possessed newly discovered evidence: Beasley's investigative report in which Beasley reported that the video surveillance footage from the gas station, although erased, may have been recoverable from a computer hard drive. (R. 30-14, Ex. P, April 12, 2010 § 2-1401 Petition at 223-24.) Petitioner argued that this report could have supported an alibi defense, and that trial counsel was ineffective for failing to notify the court of this report and for failing to obtain the video surveillance footage. (*Id.* at 224-26.) On May 3, 2010, the trial court dismissed the 2-1401 petitions, finding that Petitioner's claims lacked merit. (R. 30-5, Ex. G, Pet'r's Br. at 12; R. 30-22, Ex. X, 05/03/10 Hr'g Tr. at 193.)

On July 30, 2010, Petitioner filed with the trial court a *pro se* successive post-conviction petition, alleging claims of ineffective assistance of trial counsel and appellate counsel. (R. 30-15, Ex. Q, Successive Post-Conviction Pet. at 158-59.) On November 8, 2010, the trial court

denied Petitioner's successive post-conviction petition, finding that the allegations were frivolous and patently without merit. (R. 30-15, Ex. Q, Order at 110.)

Petitioner appealed both the trial court's decision dismissing his 2-1401 petitions and its decision denying his successive post-conviction petition; the appeals were consolidated in June 2011 and Petitioner was appointed counsel. (R. 30-5, Ex. G, Pet'r's Br. at 12.) On appeal, Petitioner argued that the trial court erred in dismissing his 2-1401 petitions before the expiration of the thirty-day period for the State to respond. (*Id.* at 13-16.) He raised no claim of error relating to the denial of his successive post-conviction petition. On April 4, 2012, the appellate court affirmed the dismissal of his successive post-conviction petition, but remanded Petitioner's 2-1401 petitions for further proceedings. (R. 30-8, Ex. J, Order at 1-4.) Petitioner did not file a PLA from the appellate court's judgment. (R. 28, Resp't's Answer at 4.)

On remand before the trial court, Petitioner re-filed his April 12, 2010 2-1401 petition. (R. 30-16, Ex. R, June 19, 2012 § 2-1401 Petition at 77-79.) On June 19, 2012, Petitioner also filed a *pro se* "motion to amend remanded relief from judgment," alleging that: (1) trial counsel withheld Beasley's investigative report from the trial court and committed perjury by telling the trial court that the video surveillance hard drive was in Washington, D.C.; (2) the State improperly impeached Hite; (3) his convictions should be "voided" because they were "in violation of the compulsory joinder and speedy trial statute[s]"; (4) the State and trial court "committed judicial misconduct when entering and reading a jury instruction" on accountability; and (5) his convictions for home invasion as principal and an accomplice are legally inconsistent and "proof that the state did not prove [his] guilty beyond a reasonable doubt." (R. 30-16, Ex. R, Mot. to Amend at 74-76.) The State moved to dismiss the 2-1401 petitions, arguing that the petitions failed to state a cause of action and that Petitioner's June 19, 2012 motion was

untimely. (R, 30-16, Ex. R, State's Mot. to Dismiss at 82-90.) On October 4, 2012, the trial court granted the State's motion to dismiss the various pleadings, (R. 30-16, Ex. R, Order at 109), and Petitioner appealed.

On appeal, Petitioner's appointed counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), because after reviewing the record, she concluded that "an appeal in this cause would be frivolous." (R. 30-9, Ex. K, Mot. to Withdraw at 1-2.) Counsel explained that Petitioner's claims of trial error were forfeited because they could and should have been raised on direct appeal and there was "no colorable argument to be made that [Petitioner's] section 2-1401 petition entitled him to relief on these claims." (*Id.* at 12.) As to Petitioner's claims regarding the video surveillance, counsel asserted that Beasley's report was not "newly discovered evidence" and thus could not support a claim for relief under section 2-1401. (*Id.* at 12-13.) Additionally, the appellate court had already considered and rejected Petitioner's claim that counsel was ineffective for failing to obtain the video surveillance footage, and thus this claim was barred by res judicata. (*Id.* at 13.) Further, counsel explained that constitutional claims of ineffective assistance of counsel are not appropriately raised in a section 2-1401 petition. (*Id.* at 14.) Counsel also explained that Petitioner's statutory speedy trial claim was forfeited, and that he never claimed a violation of his constitutional right to a speedy trial on direct appeal or in his post-conviction petition, where such constitutional claims are appropriate. (*Id.* at 14-15.) Finally, counsel asserted that Petitioner's inconsistent verdict claim was also forfeited because it should have been raised on direct appeal or in his post-conviction petition. (*Id.* at 15.) On December 13, 2013, the appellate court affirmed the dismissal of Petitioner's 2-1401 petitions and motion to amend, finding that there were "no

10

arguable errors to be considered on appeal," and granted counsel's motion to withdraw. (R. 30-11, Ex. M, Order at 2.)

Thereafter, Petitioner filed a *pro se* PLA to the Illinois Supreme Court, claiming that: (1) Beasley's report about the video surveillance was newly discovered evidence; (2) he had argued his inconsistent verdict claim in his *pro se* supplemental brief on direct appeal; (3) the State improperly impeached Hite; and (4) he had not forfeited his statutory and constitutional speedy trial claims. (R. 30-12, Ex. N, PLA at 5-8.) On March 26, 2014, the Illinois Supreme Court denied Petitioner's PLA. (R. 28, Resp't's Answer at 6.)

On June 6, 2014, Petitioner filed another *pro se* 2-1401 petition, raising a statutory speedy trial claim. (R. 30-16, Ex. R, June 6, 2014 § 2-1401 Petition at 185-200.) On July 29, 2014, the trial court granted the State's motion to dismiss, finding that the petition was "untimely and without merit." (R. 30-17, Ex. S, Order at 5.) Petitioner appealed, and that appeal remains pending in the appellate court. (R. 28, Resp't's Answer at 7.)

## IV. Habeas petition

On September 21, 2011, Petitioner filed with this Court a petition for writ of habeas corpus. (R. 1, Pet. Writ Habeas.) Respondent answered the petition on December 9, 2011, (R. 12, Resp't's Answer), but on April 11, 2012, on Petitioner's motion, the petition was administratively stayed and dismissed without prejudice with leave to amend once Petitioner exhausted his pending state collateral proceedings, (R. 17, Min. Entry). On April 30, 2014, Petitioner moved to lift the stay, (R. 18, Mot. Lift Stay), and on October 16, 2014, he filed the instant amended petition, (R. 22, Am. Pet. Writ Habeas). On January 26, 2015, the Court granted Petitioner's motion to lift the stay. (R. 23, Min. Entry.)

11

Petitioner raises the following claims in his Petition: (1) the evidence was insufficient to establish his guilt beyond a reasonable doubt; (2) he was denied his constitutional right to a speedy trial; (3) trial counsel was ineffective for failing "to call witnesses in defense for impeachment purposes and to substantiate Petitioner's alibi defense"; (4) improper "other crimes" evidence was introduced at his first jury trial; (5) the trial court abused its discretion by only inquiring into some of his post-trial ineffective assistance of counsel claims; (6) appellate counsel was ineffective for failing to argue that trial counsel was working under a conflict of interest and that the trial court should have appointed new counsel due to the conflict of interest; and (7) post-conviction appellate counsel was ineffective for filing a *Finley* brief, failing to argue that the accountability jury instruction and the "State's flip flopping of theories" deprived him of his rights to due process and a fair trial, and failing to challenge the dismissal of his successive post-conviction petition. (*Id.* at 6-11.) Respondent answered the Petition on April 1, 2015. (R. 28, Resp't's Answer.) Petitioner replied to Respondent's answer on April 10, 2015. (R. 31, Pet'r's Reply.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To obtain relief, a petitioner must show that the state court's proceedings:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under this deferential standard, the Court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). "[C]learly established Federal law" under section 2254(d)(1) "consists of 'the holdings, as opposed to the dicta,'" of the Supreme Court's cases. *Wong v. Smith*, 131 S. Ct. 10, 11 (2010) (quoting *Williams*, 529 U.S. at 412). A state court decision is "contrary to" clearly established federal law if the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams*, 529 U.S. at 405). A state court decision is "an unreasonable application of" clearly established federal law "if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams*, 529 U.S. at 407-08). "An 'unreasonable application' of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one." *Wong*, 131 S. Ct. at 11 (citing *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Before a district court can consider a petitioner's claims, the petitioner must "exhaust[ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In other words, a petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Johnson v. Pollard*, 559 F.3d 746, 751 (7th Cir. 2009) (alteration in original) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) ("As part of this requirement, a petitioner must have fairly presented both the operative facts and legal principles that control each claim to the state judiciary." (citation omitted)). This means that a

petitioner must give state courts an opportunity to resolve his constitutional claims "by invoking one complete round of the state's established appellate review process." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009) (citation omitted). "A procedural default also occurs when a state court disposes of a claim on an independent and adequate state law ground." *Johnson v. Loftus*, 518 F. 3d 453, 455 (7th Cir. 2008) (citing *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)). Procedural default precludes federal court review of a petitioner's habeas claims. *Johnson*, 559 F.3d at 752.

A petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice caused by the alleged violation of federal law or by showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *Smith*, 598 F.3d at 382 (citing *Coleman*, 501 U.S. at 750). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" that "impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show actual prejudice, a petitioner must demonstrate that the alleged violation infected the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted); *see also Smith*, 598 F.3d at 382. A fundamental miscarriage of justice occurs when a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Coleman*, 501 U.S. at 748 (quoting *Murray*, 477 U.S. at 496); *see also Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002).

# ANALYSIS

## I.    Sufficiency of the evidence claim

Petitioner claims that his constitutional rights were violated because the evidence did not establish his guilt beyond a reasonable doubt. (R. 22, Am. Pet. Writ Habeas at 6.) Respondent argues that Petitioner's claim is procedurally defaulted because he failed to raise it on one complete round of state court review. (R. 28, Resp't's Answer at 13.) To avoid procedural default, Petitioner must have asserted this claim "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014) (citation omitted). In Illinois, this means that Petitioner must have fairly presented this claim "to the Illinois Appellate Court and to the Illinois Supreme Court in a petition for discretionary review." *Smith*, 598 F.3d at 382 (citation omitted).

Petitioner did not raise a sufficiency of the evidence claim on direct appeal or in his post-conviction petitions. Petitioner does not dispute that the brief his counsel filed in support of his direct appeal did not raise this claim. However, Petitioner contends that he raised this claim in his *pro se* supplemental brief in support of his direct appeal, and thus this claim is not procedurally defaulted. (R. 22, Am. Pet. Writ Habeas at 61.)

The Illinois Appellate Court denied Petitioner leave to file his *pro se* supplemental brief. Whether a habeas petitioner can avoid procedural default by unsuccessfully attempting to supplement counseled briefs with a *pro se* filing is a matter of much debate. The Seventh Circuit, in an unpublished, non-precedential ruling, has held that a petitioner may avoid procedural default by filing a motion for leave to file a *pro se* supplemental brief raising the claim. *Kizer v. Uchtman*, 165 Fed. App'x 465, 465 (7th Cir. Oct. 25, 2005). In *Kizer*, the court

explained that the petitioner's motions to supplement and accompanying briefs "present[ed] the operative facts and controlling federal legal principles governing his claims." *Id.* at 468. The court further explained that while hybrid representation (acting as one's attorney while at the same time acting through counsel) "is not necessarily favored, there is nothing inherently improper about [it]; a court may, in the exercise of its discretion, allow [hybrid representation]." *Id.* Thus, because the petitioner "raised issues using a method that would allow the court, in its discretion, to consider federal claims of unconstitutionality," the court found that he "fairly presented" his claim. *Id.* A number of courts in this District have adopted the ruling of *Kizer*. *See, e.g.*, *United States ex rel. Murithi v. Butler*, No. 14-v-3090, 2015 WL 1399511, at *8-9 (N.D. Ill. Mar. 23, 2015) (finding that petitioner fairly presented his claims by raising them in his *pro se* supplemental PLA that was rejected by the Illinois Supreme Court); *United States ex rel. Smith v. Pfister*, No. 09 C 01346, 2013 WL 1568063, at *8-9 (N.D. Ill. Apr. 11, 2013) (finding fair presentment where petitioner presented claims in *pro se* supplemental brief). This Court similarly finds the reasoning in *Kizer* persuasive. Just like in *Kizer*, Petitioner here "practically begged the state courts to consider his claims" when he attempted to file his *pro se* supplemental brief. *Kizer*, 165 Fed. App'x at 467. The purpose of requiring a petitioner to fairly present his federal claims to the state courts is to give those courts the opportunity to remedy constitutional violations. *See Johnson*, 559 F.3d at 751. Petitioner did his best to give the Illinois Appellate Court this opportunity, as his *pro se* supplemental brief lays out both the factual and legal bases for his claims. The Court therefore finds that Petitioner fairly presented his sufficiency of the evidence claim to the Illinois Appellate Court. This does not end the inquiry, however, into whether Petitioner procedurally defaulted on this claim.

Even if Petitioner's *pro se* supplemental brief qualifies as fair presentment of his sufficiency of the evidence claim to the appellate court, this claim may still be procedurally defaulted for habeas purposes if the state court refused to reach the merits of the claim based on an independent and adequate state ground. *See Johnson*, 518 F.3d at 455. "An independent state ground will be found when the court actually relied on [a] procedural bar as an independent basis for its disposition of the case." *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (internal quotation marks and citation omitted). "A state law ground is adequate when it is a firmly established and regularly followed state practice at the time it is applied." *Id.* (internal quotation marks and citation omitted).

Here, neither party has submitted the Illinois Appellate Court's order denying Petitioner's motion for leave to file his *pro se* supplemental brief. Respondent simply asserts that his counsel "has confirmed with the appellate court clerk's office personnel" that Petitioner's motion was denied. (R. 28, Resp't's Answer at 2 n.1.) Respondent assumes, however, that the appellate court rejected Petitioner's supplemental brief because he was represented by counsel and did not have the right to file a *pro se* brief. (*Id.* at 28.) Under Illinois law, a defendant does not have the right to both represent himself and be assisted by counsel. *People v. Williams*, 454 N.E.2d 220, 227 (Ill. 1983). The rule against hybrid representation is discretionary, however, and Illinois courts have often considered *pro se* supplemental briefs in both capital and non-capital cases. *See United States ex rel. Parker v. Chandler*, No. 09 C 4231, 2011 WL 221834, at *8 (N.D. Ill. Jan. 24, 2011) (collecting cases). Courts in this District are split as to whether the Illinois rule against hybrid representation is sufficiently consistent to constitute an independent and adequate state law ground resulting in procedural default of a habeas claim. *Compare United States ex rel Galvez v. Hardy*, No. 11 C 6994, 2012 WL 588809, at *3 (N.D. Ill. Feb. 22, 2012) ("Illinois state

courts regularly followed [the rule against hybrid representation] at the time it was applied and, thus, the state law ground provided an adequate basis for disposing of [petitioner's] *pro se* brief."), *and Dolis v. Gilson*, No. 07 C 1816, 2009 WL 5166228, at *8 (N.D. Ill. Dec. 23, 2009) (holding that the "clearly established state procedural rule" prohibiting hybrid representation was an independent and adequate state ground), *with Parker*, 2011 WL 221834, at *8 (finding that the rule prohibiting hybrid representation is not "regularly followed and consistently applied" and thus the state court's rejection of petitioner's *pro se* filing based on this rule was "not an adequate and independent state-law ground that bar[red] federal review of his claims"). The *Kizer* court did not address this issue. *Kizer*, 164 Fed. App'x at 467 n.1 ("Because the State has expressly disclaimed any reliance upon it, we do not address in this Order whether the independent and adequate state ground doctrine could support a procedural default determination.").

However, this Court need not resolve this District's split in authority regarding the adequacy of Illinois' hybrid representation rule. To conclude that an independent and adequate basis exists, the state court must "clearly and expressly state[] that its judgment rests on a state procedural bar." *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (citation omitted); *see also Thomas v. McCaughtry*, 201 F.3d 995, 1000 (7th Cir. 2000) (citation omitted). Here, because the order was not submitted, the Court is unable to determine whether the Illinois Appellate Court's decision to deny Petitioner leave to file his supplemental brief rested on a state procedural bar. Therefore, the Court cannot conclude that Petitioner's claim is procedurally defaulted on this basis. *See Smith*, 2013 WL 1568063, at *11 ("The Illinois Appellate Court's summary denials make it impossible to determine whether the appellate court actually relied on a procedural bar, as an independent basis for its disposition of the case." (citation and internal quotation marks

18

, omitted)); *Lesure v. Atchison*, 891 F. Supp. 2d 920, 927 (N.D. Ill. 2012) (The court was "reluctant to find procedural default in this case given that the Illinois Appellate Court did not explain its reasons for denying [petitioner] leave to file his *pro se* supplemental brief."); *Duncan v. Hathaway*, 740 F. Supp. 2d 940, 947 (N.D. Ill. 2010) ("Without a clear and express reason for denying consideration of [petitioner's] supplemental brief, [the court] cannot conclusively find that it was based on an independent and adequate state procedural ruling.").

Nevertheless, while this Court finds that Petitioner fairly presented his claim to the Illinois Appellate Court, it cannot find that Petitioner fairly presented his claim to the Illinois Supreme Court. *See Smith*, 598 F.3d at 382 (finding that a petitioner must fairly present his claim to the Illinois Supreme Court in a petition for discretionary review to avoid procedural default). Petitioner's PLA to the Illinois Supreme Court did not include a sufficiency of the evidence claim. Instead, Petitioner's PLA raised a claim of ineffective assistance of appellate counsel for failing to raise a sufficiency of the evidence claim on direct appeal. (R. 30-3, Ex. E, PLA at 3.) "However, an assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). The fact that Petitioner raised an ineffectiveness claim in his PLA does not mean that the Illinois Supreme Court "was given the opportunity to address the underlying issue that the attorney in question neglected to raise." *Id.* Therefore, the Court finds that because Petitioner did not fairly present his sufficiency of the evidence claim to the Illinois Supreme Court, he has procedurally defaulted on this claim.

Petitioner can overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *Smith*, 598 F.3d at 382 (citing *Coleman*, 501 U.S. at 750).

Petitioner argues that his appellate counsel's failure to raise this claim on direct appeal is cause to excuse his default. (R. 22, Am. Pet. Writ Habeas at 63.) However, as explained above, Petitioner's default occurred because he failed to raise his sufficiency of the evidence claim in his *pro se* PLA to the Illinois Supreme Court, and Petitioner has asserted no cause for his failure to raise this claim at that stage. Additionally, "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" that must be fairly presented to the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Petitioner raised ineffective assistance of appellate counsel claims in his successive post-conviction petition. (R. 30-15, Ex. Q, Successive Post-Conviction Pet. at 158-159.) However, Petitioner did not raise any ineffective assistance of appellate counsel claims in his PLA to the Illinois Supreme Court during his post-conviction proceedings. (*See* R. 30-12, Ex. N, PLA at 5-8.) Therefore, Petitioner's ineffective assistance of appellate counsel claim is procedurally defaulted and cannot serve as cause to excuse his default of his sufficiency of the evidence claim. *See Edwards*, 529 U.S. at 453 (finding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").[3]

Petitioner also argues that failing to consider his sufficiency of the evidence claim will result in a fundamental miscarriage of justice. (R. 22, Am. Pet. Writ Habeas at 63.) However, Petitioner has presented no evidence to demonstrate that he is "actually innocent of the crime." *See Schlup v. Delo*, 513 U.S. 298, 324 (1995). Therefore, the Court cannot conclude that its refusal to consider this defaulted claim (or any other defaulted claim) will result in a fundamental

---

[3] Petitioner argues that ineffective assistance of appellate counsel should serve as cause to excuse all of his procedurally defaulted claims. (R. 22, Am. Pet. Writ Habeas at 57.) For the reasons discussed above, his ineffective assistance of appellate counsel claim cannot serve as cause to excuse any of his other procedurally defaulted claims.

miscarriage of justice. Accordingly, the Court finds that Petitioner's procedural default is not excused, and consequently, the Court cannot review his sufficiency of the evidence claim on the merits.

## II. Speedy trial claim

Petitioner claims that his constitutional right to a speedy trial was violated. (R. 22, Am. Pet. Writ Habeas at 6.) Respondent argues that Petitioner's claim is non-cognizable or procedurally defaulted. (R. 28, Resp't's Answer at 18-19.) Although Petitioner references the Sixth Amendment, the bulk of his argument in support of his speedy trial claim presents a question of state statutory law. (R. 22, Am. Pet. Writ Habeas at 107-15.) Petitioner is challenging the trial court's interpretation of Illinois' Speedy Trial Act, 725 Ill. Comp. Stat. 5/103-5. (*Id.* at 64, 107-15.) "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). On habeas review, this Court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* (citation omitted). Thus, Petitioner's state statutory speedy trial claim is non-cognizable.

To the extent that Petitioner raises a federal constitutional speedy trial claim in his Petition, this claim is procedurally defaulted because Petitioner failed to raise it on one complete round of state court review. *See Richardson*, 745 F.3d at 268. After his first jury trial, petitioner filed a motion to dismiss the remaining charges due to a violation of his state statutory speedy trial rights. (R. 30-3, Ex. E, 01/15/08 Hr'g Tr. at 17.) He argued that under 725 Ill. Comp. Stat. 5/103-5(a), the State had 120 days to bring him to trial, which they failed to do for the remaining charges. (*Id.*) The trial court disagreed with Petitioner, finding that under 725 Ill. Comp. Stat. 5/103-5(e), the State had an extra 160 days from the date of Petitioner's first trial to try Petitioner

on the remaining charges. (*Id.* at 25.) On direct appeal, in his *pro se* supplemental brief, Petitioner reasserted this statutory speedy trial claim. (R. 30-4, Ex. F, Pet'r's Supplemental Br. at 15-18.) Petitioner argued that 725 Ill. Comp. State 5/103-5(e) did not apply to his case because in Petitioner's view, section (e) only applied to cases where a defendant is charged under different indictments and not cases where a defendant's charges stem from the same incident. (*Id.*) In his *pro se* PLA to the Illinois Supreme Court, Petitioner raised a claim that the trial court erred in denying his motion to dismiss on statutory speedy trial grounds. (R. 30-3, Ex. E, PLA at 3.) Petitioner once again argued that the State violated 725 Ill. Comp. Stat. 5/103-5(a) when it failed to conduct his second trial within 120 days, and that 725 Ill. Comp. Stat. 5/103-5(e) did not apply to his case. (*Id.* at 10-11.) Petitioner did not even mention the Sixth Amendment or cite to any federal case law in either his *pro se* supplemental brief or his PLA. Nevertheless, Petitioner contends that he fairly presented his constitutional speedy trial claim to the appellate court and Illinois Supreme Court "by reliance on state cases employing constitutional analysis." (R. 22, Am. Pet. Writ Habeas at 64.)

"Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (citation omitted); *see also Villanueva v. Anglin*, 719 F.3d 769, 775 (7th Cir. 2013) ("A petitioner must raise his claims below 'to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue.'" (citation omitted)). Factors a court can consider when determining whether a petitioner has fairly presented his federal claim to the state courts include: (1) whether the petitioner relied on pertinent federal cases that engage in employing constitutional analysis; (2) whether the petitioner relied on state cases applying constitutional analysis to a similar factual situation; (3)

whether the petitioner asserted the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is "well within the mainstream of constitutional litigation." *Villanueva*, 719 F.3d at 775 (citation omitted). The presence of any one of these factors does not necessarily mean that the federal claim was fairly presented to the state courts; rather, "the court must consider the facts of each case." *Perruquet v. Briley*, 390 F.3d 505, 520 (7th Cir. 2004) (citation omitted).

Petitioner clearly argued on direct appeal that his state statutory right to a speedy trial was violated. (R. 30-4, Ex. F, Pet'r's Supplemental Br. at 15-18.) He relied on Illinois state cases interpreting application of the Illinois Speedy Trial Act. (*Id.*) While some of these cases also engaged in a federal constitutional analysis, their focus was on the Illinois statute. Petitioner's argument specifically focused on whether section (a) or section (e) of the statute applied to his case. Nothing in his *pro se* supplemental brief or PLA alerted the state courts to a federal constitutional speedy trial claim. The Court therefore concludes that Petitioner did not fairly present a federal constitutional speedy trial claim to the state courts. *See United States ex rel. Pruitt v. Page*, No. 97 C 2115, 2000 WL 1706711, at *2 (N.D. Ill. Nov. 14, 2000) (finding that petitioner did not fairly present a federal constitutional speedy trial claim on direct appeal where he argued that his state right to a speedy trial was violated). Accordingly, the Court finds that Petitioner has procedurally defaulted on this claim and thus will not reach the merits of this claim.

## III. Ineffective assistance of trial counsel claims

Petitioner argues that his trial counsel was ineffective for failing "to call witnesses in defense for impeachment purposes and to substantiate Petitioner's alibi defense." (R. 22, Am. Pet. Writ Habeas at 7.) Specifically, Petitioner contends that counsel provided ineffective

assistance because he: (1) failed to call as defense witnesses Beasley and Jackson, whose testimony would have impeached Hite's testimony regarding the red car Petitioner drove; (2) failed to obtain the gas station video surveillance footage; (3) advised Petitioner to testify that his co-defendant committed the crime, "knowing that this may imply to the jury that [Petitioner] was present and may be held and found guilty on an accountability theory"; (4) failed to object to the "hearsay alibi statement being used 'in part'" and failed "to get the remainder of the statement introduced, [which] allowed the State to mislead the jury into believing that [Petitioner] admitted to being there when [Mobley] was shot; (5) wrongly argued in closing arguments that the State did not have evidence that Petitioner was there when Mobley was shot; (6) failed to move to enter the police reports into evidence; (7) failed to cross-examine the crime scene investigator about the trajectories of the bullets and ejected shell casings; and (8) failed to seek independent fingerprint testing or get the State's expert to compare Petitioner's fingerprints to the fingerprints that were lifted off of specific items. (R. 22, Am. Pet. Writ Habeas at 116-17.) Respondent argues that Petitioner's ineffective assistance of trial counsel claims are procedurally defaulted because he did not raise them on one complete round of state court review. (R. 28, Resp't's Answer at 20.)

Petitioner raised all eight of these ineffective assistance of trial counsel claims in his *pro se* supplemental brief on direct appeal. (R. 30-4, Ex. F, Pet'r's Supplemental Br. at 18-22.) Thus, as explained above, Petitioner fairly presented these claims to the Illinois Appellate Court and they are not procedurally defaulted based on an independent and adequate state law ground. However, Petitioner did not fairly present all eight claims in his PLA to the Illinois Supreme Court. The only ineffective assistance claim that Petitioner raised in his PLA is that trial counsel was ineffective for failing to obtain the gas station video surveillance footage. (R. 30-3, Ex. E,

24

PLA at 3-4.) All of Petitioner's other ineffective assistance of trial counsel claims are therefore procedurally defaulted, and consequently, the Court will not review them on the merits. The Court will review Petitioner's claim that trial counsel was ineffective for failing to obtain the video surveillance footage on the merits, however, because this claim is not procedurally defaulted.

Under AEDPA, the district court may grant relief only if the state court's decision on the merits of a habeas claim "was contrary to or an unreasonable application of clearly established Supreme Court precedent, or if it was based on an unreasonable determination of the facts in light of the evidence." *Morales v. Johnson*, 659 F.3d 588, 599 (7th Cir. 2011) (citation omitted). Here, the Illinois Appellate Court denied Petitioner leave to file his *pro se* supplemental brief, and the Illinois Supreme Court summarily denied Petitioner's PLA. Thus, neither state court addressed the merits of Petitioner's ineffective assistance of trial counsel claim. When "no state court has squarely addressed the merits of a habeas claim," the district court must "review the claim under the pre-AEDPA standard of 28 U.S.C. § 2243," which requires the court to "dispose of the matter as law and justice require." *Id.* (citation and internal quotation marks omitted). This means that the Court will review Petitioner's constitutional claim "with deference to the state court, but ultimately *de novo*[.]" *Id.* (citation omitted).[4] "Even under *de novo* review, the

---

[4] Petitioner filed a post-trial motion alleging ineffective assistance of trial counsel after his first jury trial. (*See* R. 30-1, Ex. A, *Payton I* at 3-4.) As explained in more detail below, the trial court conducted a *Krankel-Moore* inquiry to determine whether Petitioner's allegations revealed possible neglect on the part of trial counsel, necessitating the appointment of new counsel. The trial court denied Petitioner's motion without explaining the legal basis for her judgment. (R. 30-19, Ex. U, 12/14/07 Hr'g Tr. at 230-33.) It is therefore impossible for the Court to determine whether the trial court conducted a proper constitutional analysis into Petitioner's ineffective assistance claims pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). Thus, the court will review this claim *de novo*.

standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The standard for evaluating an ineffective assistance claim is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A habeas petitioner must show that: (1) his attorney's performance was deficient; and (2) he was prejudiced by the attorney's deficient performance. *Id.* at 687. To satisfy the first prong, the petitioner must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. *Strickland* instructs that in making this determination a court should maintain a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). In essence, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690). To satisfy the second prong, the petitioner must demonstrate that there is a reasonable probability the result of the proceeding would have been different but for counsel's errors. *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. A court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Petitioner claims that the gas station video surveillance footage would support his alibi that he went to the gas station between 9:30 and 10:00 p.m. on the night of the incident.[5] (R. 30-22, Ex. X, 05/03/10 Hr'g Tr. at 180.) At a pre-trial proceeding on August 30, 2007, Petitioner informed the court about the gas station and asked the court to subpoena the hard drive from the gas station's computer surveillance system. (R. 30-18, Ex. T, 08/30/07 Hr'g Tr. at 59-60.) Petitioner's attorney had already informed Petitioner that he had learned that the surveillance video recording had been erased, but he agreed in open court to discuss the hard drive issue with his investigator. (*Id.* at 60.) On October 11, 2007, after Petitioner's first trial but before his second trial, investigator Beasley went to the gas station to speak to the manager about the availability of the video surveillance footage. (R. 30-3, Ex. E, Beasley's Report at 63.) Beasley reported that the manager informed him that the video surveillance footage from March 17, 2007, no longer existed because the video was recycled every seven days. (*Id.*) The manager explained that the footage from that night might be retrievable from the system's hard drive, but they would need the assistance of a computer technician. (*Id.* at 63-64.) Counsel informed the trial court at the hearing on Petitioner's 2-1401 petitions that after conducting further investigation, Beasley determined that "it was very very unlikely that anything like that would exist after that seven days even on a main drive." (R. 30-22, Ex. X, 05/03/10 Hr'g Tr. at 178-79.) Beasley shared his findings with counsel and "sent out the subpoena and everything out to Washington." (*Id.* at 179.) Counsel estimated that it would have taken about three months to obtain a result. (*Id.*) Counsel ultimately decided not to pursue the video footage because if they

---

[5] Petitioner does not include the time he went to the gas station in his Petition or in any filing that he submitted to the state courts. Petitioner simply states in his various filings that he went to the gas station on the night of the incident and that the video surveillance footage would support his alibi defense. The only place in the record the Court could find where Petitioner indicated the exact time he was at the gas station was at the May 3, 2010 hearing on his 2-1401 petitions. (R. 30-22, Ex. X, 05/03/10 Hr'g Tr. at 180.)

27

"got anything at all, [it] probably wouldn't add to the case," and Petitioner had been in custody "for quite some time" so they wanted to move the case along. (*Id.*) Counsel explained that the decision not to pursue the footage "was a strategic decision." (*Id.* at 192.)

The Court does not find that counsel's decision to forgo his pursuit of the video surveillance footage falls below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 691 ("[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."). Counsel reasonably determined that it was unlikely any footage from that night would be recovered from the hard drive. Counsel also reasonably concluded that even if recoverable, the footage probably would not have greatly helped Petitioner's case. It is not clear from the evidence presented at the trials at what exact time the crime occurred. Deputy Jeffrey Tolbert testified that he was dispatched to Mobley's house at 11:50 p.m. and he was the first officer on the scene. (R. 30-18, Ex. T, Tolbert's Test. at 222.) Hite testified that she received a phone call from Petitioner asking to speak to Mobley's mother around 11:00 p.m.; the caller ID indicated that the call came from the Mobley residence. (R. 30-19, Ex. U, Hite Test. at 99.) Hite testified that sometime after she received that call, she heard gun shots in the direction of Mobley's house. (*Id.* at 102-03.) After she heard the gun shots, she called Mobley's house and George, whose last name she did not know, informed her that Mobley had been shot and asked her to call 911. (*Id.* at 104.) She called 911 and then went across the street to assist Mobley until the paramedics arrived. (*Id.* at 104-05.) Verdis Tyler testified that he went over to Mobley's house around 10:00 or 11:00 p.m. (R. 30-19, Ex. U, Tyler Test. at 142.) When he arrived he observed that the front door was open and he found Mobley on the den floor. (*Id.* at 143-44.) If counsel assumed that the crime happened around 11:50 p.m., it is not unreasonable to conclude

that video footage showing Petitioner at a gas station between 9:30 and 10:00 p.m. would not have provided him an alibi. Counsel thus made a strategic decision to focus on other aspects of Petitioner's defense, and strategic decisions of this nature do not amount to *Strickland* violations. *See Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *Yu Tian Li v. United States*, 648 F.3d 524, 528 (7th Cir. 2011) ("So long as an attorney articulates a strategic reason for a decision that was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel." (citation omitted)). Therefore, the Court concludes that counsel's performance was not constitutionally deficient.

Because Petitioner has failed to overcome the presumption that trial counsel's decision to forgo further pursuit of the video surveillance footage was sound trial strategy, the Court need not address *Strickland's* prejudice prong. *See Strickland*, 466 U.S. at 697; *see also Johnson*, 518 F.3d at 457 ("Even when the claim is not subject to § 2254(d)(1) deference, a defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (citation and internal quotation marks omitted)). In any event, Petitioner has failed to demonstrate that there is a "reasonable probability" that he would have been acquitted of the offenses had counsel presented the video surveillance footage showing that Petitioner was at a gas station nearly two hours before the home invasion and shooting. *See Strickland*, 466 U.S. at 694. Thus, the Court concludes that Petitioner has also failed to show that he was prejudiced by counsel's failure to obtain the video surveillance footage.

Accordingly, the Court finds that Petitioner's ineffective assistance of trial counsel claim fails on the merits.

## IV.    "Other crimes" evidence claim

Petitioner argues that his constitutional rights were violated because evidence of "other crimes"—evidence relevant to the severed counts of the indictment—was improperly introduced at his first jury trial on the weapons charge. (R. 22, Am. Pet. Writ Habeas at 7.) Specifically, Petitioner contends that the State was allowed to present evidence of a home invasion and shooting, as well as "pictures with blood in them." (*Id.* at 119.) Petitioner argues that this evidence had a "prejudicial effect on the jurors who could have viewed [him] as a bad person and convicted him on this fact alone." (*Id.* at 119-20.) Respondent argues that this claim is procedurally defaulted and non-cognizable. (R. 28, Resp't's Answer at 24-25.)

Petitioner raised this claim in his *pro se* supplemental brief on direct appeal. (R. 30-4, Ex. F, Pet'r's Supplemental Br. at 60-64.) But he failed to raise this claim in his *pro se* PLA to the Illinois Supreme Court. (*See* R. 30-3, Ex. E, PLA at 3-4.) Petitioner also did not raise this claim to either the appellate court or the Illinois Supreme Court during post-conviction proceedings. Because Petitioner did not raise this claim on one complete round of state court review, it is procedurally defaulted.

In any event, Petitioner's claim lacks merit. He asserts that under Illinois law, the State may introduce evidence of other misconduct committed by a defendant only if the evidence is offered for a purpose other than to establish the defendant's propensity to commit crime and the probative value of the evidence outweighs its risk of unfair prejudice. (R. 22, Am. Pet. Writ Habeas at 120 (citing *People v. Whalen*, 634 N.E.2d 725, 732 (Ill. 1994)).) He claims that in his case, the evidence permitted was more prejudicial than probative, and therefore he was denied

his right to a fundamentally fair trial. (*Id.*) Generally, a trial court's evidentiary rulings are beyond the scope of federal habeas review. *Perruquet*, 390 F.3d at 511; *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001). "Violations of state evidentiary rules may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights." *Escobar v. O'Leary*, 943 F.2d 711, 720 (7th Cir. 1991) (citation and internal quotation marks omitted); *see also Perruquet*, 390 F.3d at 511-12.

As an initial matter, Petitioner cannot establish that the trial court's decision to allow "other crimes" evidence was contrary to Supreme Court precedent. No Supreme Court case has held that the admission of evidence of other crimes violates a defendant's due process rights even if it is admitted to show the propensity of the defendant to commit crimes. In fact, the Supreme Court has expressly reserved judgment on this issue. *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); *see also Richardson v. Hardy*, 855 F. Supp. 2d 809, 815-16 (N.D. Ill. 2012) (noting the lack of Supreme Court precedent on this issue); *Bennett v. Bartley*, No. 07 C 1975, 2008 WL 4866169, at *4 (N.D. Ill. June 23, 2008) (recognizing that "the Supreme Court has not established a clear precedent regarding" the due process implications of "permitting the use of past crimes evidence to show propensity").

Thus, the only federal constitutional principle on which Petitioner may rely "is a catch-all sense of due process, [a claim that] almost always fails." *Hammer v. Karlen*, 342 F.3d 807, 811 n.3 (7th Cir. 2003) (citation omitted). A state court evidentiary ruling can be a basis for federal habeas relief only if the ruling "so infused the trial with unfairness as to deny due process of

law." *Estelle*, 502 U.S. at 75 (citation omitted). "In order to claim a right to relief, a petitioner must establish that the incorrect evidentiary ruling was so prejudicial that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted." *Dressler*, 238 F.3d at 914; *see also Perruquet*, 390 F.3d at 510 ("[O]nly if the state court committed an error so serious as to render it likely that an innocent person was convicted can the error be described as a deprivation of due process."). Petitioner has not presented any evidence to suggest that he is innocent. The trial court's decision to permit evidence of the severed counts in Petitioner's first jury trial was a matter of discretion, and the Court cannot find that this decision was so egregious that it violated Petitioner's due process right to a fundamentally fair trial. *See Anderson v. Sternes*, 243 F.3d 1049, 1055 (7th Cir. 2001) (On habeas review, the court does not "balance the probative value [of the "other crimes" evidence] against the unfair prejudice because the Due Process Clause does not permit federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."); *United States ex rel. Aleman v. Sternes*, 205 F. Supp. 2d 906, 916 (N.D. Ill. 2002) (finding that the petitioner failed to establish that he was subjected to a fundamentally unfair trial where he argue that the trial court improperly admitted evidence of other crimes). Petitioner therefore has not established that the trial court unreasonably applied clearly established federal law. Accordingly, even if Petitioner's claim were not procedurally defaulted, it would fail on the merits.

## V.     Abuse of trial court's discretion claim

Petitioner argues that the trial court abused its discretion by only inquiring into some of his post-trial ineffective assistance of counsel claims. (R. 22, Am. Pet. Writ Habeas at 8.) Respondent argues that this claim is non-cognizable because it raises solely an issue of state law. (R. 28, Resp't's Answer at 25.)

As an initial matter, this claim is not procedurally defaulted because Petitioner asserted it throughout one complete round of state court review on direct appeal. (*See* R. 30-1, Ex. B, Def.'s Br. at 12; R. 30-3, Ex. E, PLA at 3-4.) Petitioner's claim alleges a violation of the Illinois state common law right created in *Krankel* (and reaffirmed in *Moore*). Under Illinois law, "when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim." *Moore*, 797 N.E.2d at 637. If the trial court determines that the allegations reveal possible neglect on the part of counsel, the court should appoint new counsel to represent the defendant at the hearing on his *pro se* claim of ineffective assistance. *Id.* at 637-38. "If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *Id.* at 637. A trial court may conduct a preliminary investigation by: (1) questioning trial counsel about the facts and circumstances surrounding the allegedly ineffective representation; (2) questioning the defendant about his allegations; or (3) relying on "its own knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id.* at 638.

Petitioner argued on direct appeal that the trial court did not conduct a proper *Krankel-Moore* inquiry into his ineffective assistance of trial counsel claims because she only discussed three of the eight claims with him and his attorney before denying his motion. (R. 30-1, Ex. B, Def.'s Br. at 22-26.) The Illinois Appellate Court disagreed with Petitioner, holding that the "trial judge properly considered and ruled on [Petitioner's] ineffective assistance of counsel claims based on her discussions with both defendant and his attorney and her independent recollection of the jury trial in this case." (R. 30-1, Ex. A, *Payton I* at 8.)

Plaintiff's claim that trial counsel failed to conduct an adequate *Krankel-Moore* inquiry into his ineffective assistance claims is not cognizable in a federal habeas petition because it is based solely on state law. *Estelle*, 502 U.S. at 67 ("[F]ederal habeas corpus relief does not lie for errors of state law." (citation omitted)); *see also Clark v. Gaetz*, No. 10-3185, 2012 WL 3185889, at *4 (C.D. Ill. Aug. 2, 2012) (finding that "the alleged *Krankel* violation is insufficient for the grant of a Writ of Habeas Corpus"); *Reed v. Rednour*, No. 10-CV-2030, 2011 WL 1792865, at *10 (C.D. Ill. May 11, 2011) ("*Krankel* is based solely on state law, and as such, Petitioner's claim relating to post-trial ineffective assistance is non-cognizable in a federal habeas petition."); *Dolis*, 2009 WL 5166228, at *13 (finding that an alleged *Krankel* violation is a matter of state law). Further, no clearly established Supreme Court precedent mandates the *Krankel-Moore* inquiry. *See Reed*, 2011 WL 1792865, at *10; *Dolis*, 2009 WL 5166228, at *13. Thus, the Illinois Appellate Court's decision affirming the trial court's judgment was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Accordingly, the Court will not grant Petitioner habeas relief on this claim.

## VI.    Ineffective assistance of appellate counsel claim

Petitioner argues that appellate counsel was ineffective for failing to argue that trial counsel was working under a conflict of interest and thus the trial court should have appointed new counsel due to the conflict of interest. (R. 22, Am. Pet. Writ Habeas at 9.) Petitioner's ineffective assistance of appellate counsel claim stems from his dissatisfaction with the trial court's denial of his post-trial ineffective assistance of trial counsel motion. (*Id.* at 130-36.) Respondent argues that Petitioner's claim is procedurally defaulted because he failed to raise this claim on one complete round of state court review. (R. 28, Resp't's Answer at 26.)

34

Petitioner raised this ineffective assistance of appellate counsel claim in his successive post-conviction petition. (R. 30-15, Ex. Q, Successive Post-Conviction Pet. at 159.) The trial court dismissed Petitioner's successive post-conviction petition, finding that the allegations were frivolous and patently without merit. (R. 30-15, Ex. Q, Order at 110.) On appeal, Petitioner raised no issue regarding his successive post-conviction petition, (*see* R. 30-5, Ex. G, Pet'r's Br. at 4-17), and the Illinois Appellate Court affirmed the trial court's dismissal of that petition, (R. 30-8, Ex. J, Order at 1-4). Petitioner did not file a PLA from the appellate court's judgment. (R. 28, Resp't's Answer at 4.) Petitioner also did not raise any ineffective assistance of appellate counsel claims in the only PLA he filed during his post-conviction proceedings. (*See* R. 30-12, Ex. N, PLA at 5-8.) Accordingly, Petitioner's ineffective assistance of appellate counsel claim is procedurally defaulted and the Court will not review this claim on the merits.[6]

## VII.  Ineffective assistance of post-conviction appellate counsel claim

Finally, Petitioner argues that post-conviction appellate counsel was ineffective for filing a *Finley* brief, failing to argue that the accountability jury instruction and the "State's flip flopping of theories" deprived him of his rights to due process and a fair trial, and failing to challenge the dismissal of his successive post-conviction petition. (R. 22, Am. Pet. Writ Habeas at 10-11.) Section 2254(i) provides that "[t]he ineffectiveness or incompetence of counsel during

---

[6] Petitioner first raised his claim that appellate counsel was ineffective for failing to argue that trial counsel was working under a conflict of interest in his *pro se* PLA to the Illinois Supreme Court on direct appeal. (R. 30-3, Ex. E, PLA at 3-4.) Petitioner contends that raising this claim in his *pro se* PLA on direct appeal is sufficient to avoid procedural default. However, raising a claim for the first time in a PLA does not constitute proper exhaustion. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) (finding that presenting a claim for the first time "to a State's highest court on discretionary review" does not "constitute 'fair presentation'"). Because Petitioner did not (and could not have) fairly presented this ineffective assistance of appellate counsel claim to the Illinois Appellate Court on direct appeal, he did not raise this claim throughout one complete round of state court review on direct appeal. *See Smith*, 598 F.3d at 382. Thus, the fact that Petitioner raised this claim in his PLA on direct appeal does not cure his procedural default.

Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Thus, Petitioner's claims of ineffective assistance of post-conviction appellate counsel are non-cognizable.

Accordingly, because all of Petitioner's claims are either procedurally defaulted, non-cognizable, or without merit, the Court denies the Petition.

## VIII.  Certificate of appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability, a habeas petitioner "must make a substantial showing of the denial of a constitutional right" by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted); *see also* 28 U.S.C. § 2253(c)(2). When a claim is resolved on procedural grounds, a district court can grant a certificate of appealability "only when the proverbial reasonable jurist would find both the district court's procedural decision and the merits of the claim debatable." *Peterson v. Douma*, 751 F.3d 524, 530-31 (7th Cir. 2014) (citing *Slack*, 529 U.S. at 484).

As fully explained above, Petitioner's claims are either procedurally defaulted, non-cognizable, or without merit under AEDPA standards. Nothing before the Court suggests that reasonable jurists would debate the outcome of the Petition or find a reason to encourage Petitioner to proceed further. Accordingly, the Court will not issue Petitioner a certificate of appealability.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus (R. 22) is

DENIED and the Court declines to issue a certificate of appealability.

ENTERED: _____

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: October /, 2015**